IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| Angela Pickard, Individually and as Executor of the Estate of Archie Pickard, deceased, Dustin Pickard, Wendy Elmore, Joni Thompson and Wayne Pickard, | § § § § § | Civil Action No. 5:20-CV-01448 |
| Plaintiffs | § § | JUDGE WALTER |
| v. | § § | MAGISTRATE JUDGE HAYES |
| Amazon.com, Inc.; Amazon.com, LLC; Amazon.com Services LLC; Amazon.com Services LLC formerly known as Amazon.com Services, Inc.; Amazon.com Services, Inc.; Amazon.com Services, Inc. formerly known as Amazon Fulfillment Services, Inc.; Amazon Fulfillment Services, Inc.; and Amazon.com Sales, Inc., | § § § § § § § § § § § | |
| Defendants | § | TRIAL BY JURY REQUESTED |

**PLAINITFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND**

COME NOW Plaintiffs Angela Pickard, Individually and as Executor of the Estate of Archie Pickard, deceased, Dustin Pickard, Wendy Elmore, Joni Thompson, Wayne Pickard, and Stacey Coale ("Plaintiffs"), and file this Second Amended Complaint complaining of Amazon.com, Inc. (hereinafter "Defendant" and/or "Amazon") and for cause of action would respectfully show this Honorable Court the following:

# I.

# PARTIES

1. Plaintiff Angela Pickard, Individually and as Executor of the Estate of Archie Pickard, deceased, is a citizen of and is domiciled in the state of Louisiana. Angela Pickard resides in Louisiana, where she intends to remain. The decedent, Archie Pickard was a citizen of and domiciled in the state of Louisiana. Archie Pickard resided in Louisiana, where he intended to remain.

2. Plaintiff Dustin Pickard is a citizen of and is domiciled in the state of Louisiana. Dustin Pickard resides in Louisiana, where he intends to remain.

3. Plaintiff Wendy Elmore is a citizen of and is domiciled in the state of Louisiana. Wendy Elmore resides in Louisiana, where she intends to remain.

4. Plaintiff Joni Thompson is a citizen of and is domiciled in the state of Louisiana. Joni Thompson resides in Louisiana, where she intends to remain.

5. Plaintiff Wayne Pickard is a citizen of and is domiciled in the state of Colorado. Wayne Pickard resides in Colorado, where he intends to remain.

6. Plaintiff Stacey Coale is a citizen of and is domiciled in the state of Texas. Stacey Coale resides in Texas, where she intends to remain.

7. Defendant Amazon.com, Inc. is a corporation that is citizen of and incorporated in the state of Delaware and is a citizen of and has its principal place of business in Washington. Defendant is doing business in the State of Louisiana and caused an injury through its act or omission in the State of Louisiana. Defendant does not have a registered agent for service of process in the state of Louisiana. Service of Process on

Defendant may be made according to the laws of the state of Louisiana, pursuant to LSA-R.S. 13:3201 and LSA-R.S. 13:3204 by either serving its registered agent for service in Washington: Corporation Service Company, 300 Deschutes Way SW Ste 208 M; C-CSC1, Tumwater, Washington 98501, or by service on any employee of suitable age and discretion at 410 Terry Avenue, Seattle, WA 98109, the place where the business of the corporation is regularly conducted.

## II.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this case under 28 U.S.C. § 1332. There is a complete diversity of parties and the amount in controversy is over $75,000.

9. Plaintiffs are citizens and domiciled in the states of Louisiana, Colorado and Texas.

10. Amazon is a citizen of Delaware and Washington, where it has its principal place of business.

11. This Court has specific personal jurisdiction over Amazon. Amazon had a pecuniary interest in and facilitated the transaction underlying this litigation, involving a purchase by a Louisiana resident of a product made available for sale in Louisiana and shipped to Louisiana by use of Amazon's website and, upon information and belief, Amazon collected Louisiana sales tax on behalf of the seller for the transaction.

12. Plaintiffs believe that jurisdiction and venue is proper in the Shreveport Division of the Western District of Louisiana, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred at 3535 Colquitt Rd, Shreveport,

Louisiana 71118-4207, where Plaintiffs' decedent, Archie Pickard, was killed as a result of using the unreasonably dangerous product that was shipped to him at that address after he purchased it through Amazon's website.

## III.

## FACTUAL BACKGROUND

**A.     Archie Pickard purchased a battery charger from Amazon.**

13.     Amazon operates a website, in which it both (1) acts as a retailer in selling products directly to consumers and (2) provides a forum for third-party sellers to sell products, subject to Amazon's policies and product safety oversight and review.

14.     Archie Pickard bought a "18650 Rechargeable Li-ion Battery Charger 4 Slot Universal Smart Li-ion Battery Charger" (hereinafter, "battery charger") using Amazon's website. This purchase was made in Order #114-3726846-1362641 on December 15, 2019. He purchased this item from an Amazon third-party seller, Jisell, using Amazon's website. *See* Fig. 1, screenshot from Amazon's website showing battery charger.



**Fig 1. – Subject battery charger product listing on Amazon's website**

15. In making this purchase, Archie Pickard relied on Amazon's promises to oversee safety on its website, including Amazon's promises to remove items that do not comply with its safety policies, directly notify consumers if there is a safety issue with a product, monitor safety documentation for products, continuously improve its tools to prevent unsafe products from being listed and vetting new sellers.

**B. Amazon undertakes to protect its customers from products sold by third-party sellers on Amazon's website.**

16. Amazon promises to protect its customers, like Archie Pickard, from dangerous items sold by third-party sellers on Amazon's website. Specifically, Amazon promises to (1) remove items that do not comply with its safety policies, (2) directly notify consumers if there is a safety issue with a product, (3) monitor safety documentation for products, (4) continuously improve its tools to prevent unsafe products from being listed, and (5) vet new sellers.

5

17.     Amazon promises to remove items sold by third-party sellers on its website that are unsafe. For example, Amazon's "Product and Safety Compliance" policy states that "All products offered in our stores must comply with applicable laws and regulations, and our own policies." Amazon's "Restricted Products" policies states that "[i]f you [the seller] supply a product in violation of the law or any of Amazon's policies, including those listed on the Restricted Products pages, we will take corrective actions, as appropriate, including but not limited to immediately suspending or terminating selling privileges, destroying inventory in our fulfillment centers without reimbursement, returning inventory, terminating the business relationship, and permanent withholding of payments. The sale of illegal or unsafe products can also lead to legal action, including civil and criminal penalties. We are constantly innovating on behalf of our customers and working with regulators, third party experts, vendors, and sellers to improve the ways we detect and prevent illegal and unsafe products from reaching our marketplace. Amazon encourages you to report listings that violate Amazon's policies or applicable law by contacting us. We will investigate each report thoroughly and take appropriate action."

18.     Amazon imposes specific safety restrictions on products sold by third-party sellers and conducts specific safety reviews for certain products "which have a higher risk of safety concerns." Amazon's "Restricted Products" policy states that "[s]hopping with confidence is one of the highest priorities of Amazon. In order to ensure the products available on Amazon are safe, we have identified certain products (see listing below) which have a higher risk of safety concerns. To list products in these categories, you must apply and submit documents showing that the products are safe for customers."

6

19. Amazon promises its customers that it will "directly notify" them if there is a "safety issue" with a product sold by a third-party seller. Amazon's "Product Safety and Compliance" document states that "because of our direct relationships with customers, we are able to trace and directly notify customers who purchased a particular product online and alert them to a potential safety issue . . . ."

20. Amazon also promises its customers that it monitors safety documentation of products sold by third-party sellers on its website. Amazon's "Product Safety and Compliance" document states that "[w]e have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products." That same document, again, promises that "[o]nce a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern."

21. Amazon promises to vet new third-party sellers who intend to sell on Amazon's website. Specifically, Amazon's "Product Safety and Compliance" document holds out to the public that Amazon engages in "new seller account vetting."

22. Finally, Amazon represents that it "continuously scans our product listings and updates to find products that might be of concern. Amazon's "Product Safety and Compliance" document promises that "Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly."

23. Amazon did not perform any of these tasks with regard to the battery charger.

24. The battery charger did not comply with Amazon's product safety policies. It was a fire hazard as detailed in the Customer reviews that Amazon purportedly reviews every few minutes. Despite this product violating Amazon's safety policy, and Amazon's undertaking to remove such products from third-party sellers from its website to protect its customers, Amazon did not remove the battery charger.

25. There were repeated indications, detailed in paragraphs 32-42, that the battery charger was dangerous. But Amazon never notified Archie Pickard that there was a safety issue with the battery charger.

26. There were repeated indications, detailed in paragraphs 32-42, that the battery charger was dangerous. But Amazon did not monitor this safety documentation for the battery charger.

27. Amazon did not adequately vet the third-party seller, Jisell, who repeatedly sold defective and dangerous products, as explained in paragraphs 32-42. Amazon states that its vetting process includes a number of verifications and uses proprietary machine learning technology that stops bad actors before they can register a product in its store. Amazon further claims that it has a dedicated global team of compliance specialists that review submitted safety documentation for a product. In this instance, there is no indication that Amazon took any action to vet Jisell. Amazon failed in its vetting process and allowed a third-party seller to continue to sell the battery charger, which was an unsafe product because it was a fire hazard.

    **C.    Jisell, the third-party seller, is an "alter ego" of Amazon under Louisiana law.**

28. Amazon is a "manufacturer" of the battery charger under Louisiana law, La. Stat. § 9:2800.53(1)(d).

29. Jisell, the third-party seller, manufactured the battery charger. Jisell is an alien manufacturer because it is a Chinese company, based in Shang Hai. According to the "Detailed Seller Information" on Amazon's website, Jisell is the fictious or "friendly" name for Shang Hai Ji Xiao Dian Zi Ke Ji You Xian Gong Si, a Chinese company whose business address is Feng Xian Qu Hai Wan Zhen Wu Si Gong Lu, 4399 Hao 37 Dong 107, Shang Hai 201499.

30. Amazon is in the business of importing and/or distributing Jisell's products, including the battery charger, in the United States for resale. Amazon routinely imports Jisell's products into the United States and lists them on Amazon's website for resale. Amazon specifically imported the battery charger at issue into the United States for purposes of distribution to buyers, like Archie Pickard.

31. Amazon is the alter ego of Jisell as that term is used in La. Stat. § 9:2800.53(1)(d). Amazon assumes and administers product warranty obligations for Jisell, as detailed in paragraphs 23-34. Additionally, Amazon assumes or administers product warranty obligations of Jisell by accepting returns of Jisell's products if the products are defective. Furthermore, Amazon prepares the product for distribution by shipping it from Amazon's warehouses.

    **D.    Amazon knew, or reasonably should have known, that the battery charger was unreasonably dangerous to its customers.**

32. Amazon knew, or reasonably should have known, that the battery charger was unreasonably dangerous to its customers.

33. Amazon's website allows purchasers of products to leave reviews of products purchased on Amazon's website, including a description of problems that a customer encountered with the product.

34. Jisell, the third-party seller of the battery charger, sells a substantively similar six-slot battery charger ("substantively similar battery charger") on Amazon's website. This substantively similar battery charger is identical in all respects to the battery charger that Archie Pickard purchased, with one exception. The substantively similar battery charger can charge six batteries at a time, while the battery charger at issue can only charge four batteries at a time. This slight difference makes no difference as to the safety issues with the battery charger and the substantively similar battery charger.

35. This substantively similar battery charger had several reviews indicating that the battery charger had safety issues. Over the course of several months, several reviews of a substantively similar battery charger state that the item is "dangerous."

36. An October 13, 2019 review noted that the substantively similar battery charger is "dangerous" and a "fire hazard." This review stated that the substantively similar battery charger "[s]parked like crazy when first plugged in."

37. An October 19, 2019 review also noted that the substantively similar battery charger is "defective" and that there were "sparks from cord when plugging [it] into [a] household outlet."

38. An October 11, 2019 review of the substantively similar battery charger specifically notes that "someone less knowledgeable might have bur[n]t their house down."

39. The four-slot battery charger purchased by Archie Pickard has continued to have safety issues as reported to Amazon by a verified purchaser through his October 18, 2020 review. In his review, the purchaser stated the battery charger was junk and "It caught on fire DO NOT BUY!!" *See* Fig. 2 below.



**Fig. 2 – Customer Review of Subject Battery Charger**

40. In addition to Amazon's general promises to review safety information for products, detailed in paragraphs 16-27, Amazon specifically monitored reviews of the substantively similar battery charger. For example, Amazon removed an April 6, 2018 review of the substantively similar battery charger. Additionally, Amazon removed similar reviews of the substantively similar battery charger posted on May 1, 2019, in July 2018,

11

and in August 2018. These actions demonstrate that Amazon was actively monitoring the reviews on the substantively similar battery charger.

41.     If Amazon's undertakings, described in paragraphs 16-27, were performed with due care, both the substantively similar battery charger and the battery charger purchased by Archie Pickard would have been removed from Amazon's website.

42.     At a minimum, Amazon's undertakings, described in paragraphs 16-27, should have determined that these reviews from the substantively similar battery charger indicated that the battery charger that Archie Pickard purchased was defective.

### E.     The battery charger caused a fire at Archie Pickard's home and caused him to sustain burn injuries that caused his death.

43.     The battery charger caused a fire at Archie Pickard's house at 3535 Colquitt Road Shreveport, Louisiana 71119 on or about December 21, 2019. Archie Pickard owns the real property, including the house, at 3535 Colquitt Road Shreveport, Louisiana 71119.

44.     On or about December 21, 2019, in the early morning, Archie Pickard was asleep in the living room recliner at his house at 3535 Colquitt Road Shreveport, Louisiana 71119.

45.     Archie Pickard was suddenly awakened by a noise. He saw sparks coming from the battery charger on the floor near the recliner, where he was charging lithium ion batteries.

46.     Archie Pickard then went to the home of his neighbor, Michael Starnes, who lived at 3537 Colquit, woke him, and alerted him to the fire. Mr. Starnes called 9-1-1, and then he took his fire extinguisher to Archie Pickard's house. Mr. Starnes sprayed the

extinguisher on the fire in the area of the recliner. After some initial success, the smoke became too severe, so both exited. Eventually, the fire department extinguished the fire.

47. After the fire, an investigation confirmed that the movement and intensity patterns indicated that the fire traveled northward from the living room, into the front entry. Fire damage was discovered throughout the house and was observed to the windows and eaves of the roof in all areas.

48. The investigation discovered damage to the battery charger including its power cord, which appeared to be the origin of the fire. Archie Pickard's eyewitness statement and the statement of the neighbor, Michael Starnes, confirmed that the fire originated from the battery charger. *See* Fig. 3, photograph of the battery charger post fire.



**Fig. 3. – Photo of Subject Battery Charger Post Fire**

49. In short, the eyewitness accounts and the investigation confirmed that an electrical malfunction in the battery charger was the ignition source of the fire.

50. Archie Pickard sustained severe burns as a result of the fire. After the fire department arrived in response to Starnes' 9-1-1 call, they determined that Archie Pickard required medical attention. Archie Pickard was transferred to a nearby hospital, where he ultimately died as a result of the burn injuries and their complications.

## IV.

## CAUSES OF ACTION

### A. Products Liability.

51. Plaintiffs incorporate paragraphs 1-50 as if fully set forth here.

52. The battery charger is unreasonably dangerous in design or construction. It has been known to cause fires. No reasonably designed battery charger would do so. There was an electrical malfunction in the battery charger and/or its cord which caused a sufficient level of heat to build up to ignite a fire in Mr. Pickard's home.

53. These defects existed in the battery charger at the time the product left the manufacturer. The defects in the battery charger existed from the time it was made and there were no subsequent modifications to the battery charger after it left the manufacturer.

54. Amazon is a manufacturer under the Louisiana products liability statute.

55. The Louisiana products liability statute provides that a "seller of a product of an alien manufacturer" is a manufacturer for purposes of products liability "if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer." La. Stat. § 9:2800.53(1)(d).

56. For the reasons discussed in paragraphs 13-31, Amazon is in the business of importing or distributing the battery charger for resale.

57. The Louisiana products liability statute considers several factors in determining whether the seller is an alter ego of the manufacturer for purposes of that statute: "whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence."

58. For the reasons discussed in paragraphs 28-31, Amazon is an alter ego of Jisell, the entity that designed, constructed and manufactured the battery charger.

59. Plaintiffs were seriously damaged by Amazon's conduct described in paragraphs 13-42. These damages are further detailed in paragraphs 43-50.

60. Plaintiffs also suffered mental anguish due to the fire and other damages caused by Amazon's conduct detailed in paragraphs 13-42.

**B. Negligent Undertaking.**

61. Plaintiffs incorporate paragraphs 1-50 as if fully set forth here.

62. In the event that it is determined that Amazon is not a manufacturer, Plaintiffs, in the alternative, assert this claim for negligent undertaking under Louisiana law.

63. Amazon voluntarily undertook to protect buyers from unsafe products sold by third-party sellers on Amazon's website, as discussed in paragraphs 16-27.

64. This voluntary undertaking imposed a duty under Louisiana law on Amazon to perform the undertakings discussed in paragraphs 16-27 with due care. Additionally, Amazon has a duty to Plaintiffs/Decedent under La. Civ. Code art. 2315(A).

65. Amazon did not perform those duties with due care, as discussed in paragraphs 13-42.

66. Plaintiffs were seriously damaged by Amazon's conduct described in paragraphs 13-42. These damages are further detailed in paragraphs 43-50.

67. Plaintiffs also suffered mental anguish due to the fire and other damages caused by Amazon's conduct detailed in paragraphs 13-42.

**C.     Non-manufacturing seller liability.**

68. Plaintiffs incorporate paragraphs 1-50 as if fully set forth here.

69. Amazon sold the battery charger at issue, as detailed in paragraph 14. In the event that it is determined that Amazon is not a manufacturer, Plaintiffs, in the alternative, assert this claim for non-manufacturing seller liability under Louisiana law.

70. Amazon had actual or constructive knowledge that the battery charger was defective. Specifically, Amazon had actual knowledge that the substantively similar battery charger was defective, as detailed in paragraphs 32-42. From that knowledge, it can be inferred that Amazon had actual or constructive knowledge that the battery charger that Decedent purchased was defective.

71. Additionally, Amazon has an algorithm that identifies defective/dangerous products. The algorithm should have identified the battery charger as defective.

72. Plaintiffs were seriously damaged by Amazon's conduct described in paragraphs 13-42. These damages are further detailed in paragraphs 43-50.

73. Plaintiffs also suffered mental anguish due to the fire and other damages caused by Amazon's conduct detailed in paragraphs 13-42.

## V.

## DAMAGES

74. Archie Pickard's children, Plaintiffs Angela Pickard, Dustin Pickard, Wendy Elmore, Joni Thompson, Wayne Pickard, and Stacey Coale were very close to their father and enjoyed a deep and abiding relationship of love and affection with him.

75. As a result of their father's death, Plaintiffs suffered wrongful death damages, including intense grief, anguish, and physical and mental pain as well as irreparable loss, including loss of consortium and society, in being deprived of the company, love and affection of their father.

76. Additionally, as a result of the death of their father, Plaintiffs have sustained economic losses and other losses allowed by law.

77. As the surviving children of Archie Pickard, respectively, Plaintiffs are his survivors within the meaning of Louisiana Civil Code Articles 2315, *et seq.*, and, as such, are entitled to recover for the pain and suffering which Archie Pickard endured prior to his death, as well as for the losses, including past medical expenses, pecuniary and nonpecuniary, which they have sustained as outlined above.

## VI.

## JURY DEMAND

78. Plaintiffs demand a jury trial on all of the allegations in this Second Amended Complaint, and all amendments and supplements thereto, and all of the defenses in Defendant's Original Answer(s), and all supplements and amendments thereto. A jury fee was previously paid with the Plaintiffs' filing of their original complaint.

## VII.

## PRAYER

79. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be served with a copy of this Second Amended Complaint and cited to appear and answer same, and that after due proceedings are had there be judgment herein against Defendant in favor of Plaintiffs, in such full amounts as are found to be due Plaintiffs under the laws of Louisiana governing damages in cases of this kind, together with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings and for all general and equitable relief.

80. Plaintiffs request prejudgment and post judgment interest at the maximum rate allowed by law.

Respectfully submitted,

MITHOFF LAW

*/s/ Janie L. Jordan*
RICHARD WARREN MITHOFF
Admitted Pro Hac Vice
Texas State Bar No. 14228500
rmithoff@mithofflaw.com
JANIE L. JORDAN
Admitted Pro Hac Vice
Texas State Bar No. 11012700
jjordan@mithofflaw.com
Penthouse, One Allen Center
500 Dallas, Suite 3450
Houston, Texas 77002
713-654-1122 tel
713-739-8085 fax

and

*/s/ Charles E. Tabor*
CHARLES E. TABOR
LA Bar Roll No. 31984
CTabor@gcj-law.com
GREGORIO, CHAFIN, JOHNSON, POOLSON & TABOR, L.L.C.
7600 Fern Avenue, Building 700
Shreveport, LA 71105
Telephone: (318) 865-8680
Facsimile: (318) 865-8565

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been served on all counsel of record through the Court's CM/ECF filing system on January 12, 2021.

*/s/ Janie L. Jordan*
JANIE L. JORDAN