UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**ANGELA PICKARD, ET AL**               **CIVIL DOCKET NO. 5:20-cv-01448**

**VERSUS**                              **JUDGE DAVID C. JOSEPH**

**AMAZON.COM, INC.**                    **MAGISTRATE JUDGE KAYLA D. MCCLUSKY**

## MEMORANDUM ORDER AND CERTIFIED QUESTIONS

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") [Docs. 59, 76] filed by Defendant, Amazon.com, Inc. ("Amazon"). The Motion is opposed by Plaintiffs, Angela Pickard, Individually and as Executor of the Estate of Archie Pickard, deceased, Dustin Pickard, Wendy Elmore, Joni Thompson, Wayne Pickard, and Stacey Coale (hereinafter, "Plaintiffs"). [Doc. 69].

On October 17, 2023, this Court held oral argument and requested additional briefing on the definition of a "seller" under the Louisiana Products Liability Act, La. R.S. Ann. 9:2800.51, et seq. ("LPLA"). After careful consideration of the parties' briefing, applicable law, and Louisiana jurisprudence, the Court finds that certification of two questions of law to the Louisiana Supreme Court is necessary to resolve Amazon's Motion for Summary Judgment. Accordingly, Amazon's Motion is DENIED pending action by the Louisiana Supreme Court on this Court's certified questions. Amazon may re-urge its Motion within thirty (30) days of disposition of the certified questions by the Louisiana Supreme Court.

## BACKGROUND AND PROCEDURAL HISTORY

On December 15, 2019, Archie Pickard ("Pickard") purchased a "18650 Rechargeable Li-ion Battery Charger 4 Slot Universal Smart Li-ion Battery Charger" on Amazon's website. [Doc. 17]. Although purchased from Amazon's website, Amazon's product listing explicitly stated that the charger was actually being "sold by" a third-party company, "Jisell." [Doc 59-10 p. 2]. The product listing also included the product's Amazon Standard Identification Number, ASIN B07PGTHXCT. *Id.* The third-party seller, Jisell, sold products on Amazon's website, assented to Amazon's terms of use, and used Amazon's optional "Fulfillment by Amazon" ("FBA") storage and logistics service to fulfill its orders. [Doc. 59-10, pp. 2-3]. As such, although the battery charger was stored at an Amazon fulfillment center in San Marcos, Texas, prior to shipment, Jisell never transferred ownership of the battery charger to Amazon. [Doc. 59-10, p. 6, Doc. 69-42, p. 10]. In the early morning hours of December 21, 2019, a house fire, allegedly caused by a defect in the battery charger, ravaged Pickard's home in Shreveport, Louisiana. As a result of the fire, Pickard suffered severe burn wounds and died of his injuries.

In November 2020, Plaintiffs filed a wrongful death and survival action suit in the United States District Court for the Western District of Louisiana, Shreveport Division. [Doc. 1]. Plaintiffs assert state law claims under the LPLA as well as under the tort theory of negligent undertaking as described in the Restatement (Second) of Torts §§ 323 and 324A. The Court has jurisdiction over this matter based on the parties' diversity of citizenship and no claims or defenses arise under federal law or the laws of any other jurisdiction. Accordingly, the substantive law of State of

Louisiana applies to the asserted claims. U.S.C. § 1332; *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014).

## DISCUSSION

Amazon's online website, Amazon.com, includes both: (i) products sold by Amazon as the retailer, and (ii) the products of approximately two million "third-party sellers." [Doc. 69-30, p. 3]. These third-party sellers, among other responsibilities, set their own prices and describe their own products. To list products on Amazon, third-party sellers must set up a seller account and agree to the terms of the Amazon Services Business Solutions Agreement ("BSA"). [Doc. 59-10, p. 3]. The BSA requires the third-party seller to provide information regarding its products including description, price, and any required labels and warnings. *Id.* It also allows the third-party seller to offer any warranty of its choosing. *Id.* at p. 4. Third-party sellers are responsible for importing and ensuring their products are properly packaged and comport with all applicable laws. *Id.*

Here, Jisell was listed as the seller on the product detail page on Amazon's website and in the "sold by" line of the transaction record when Pickard purchased the relevant battery charger. As Amazon required for its third-party sellers, Jisell had previously agreed to Amazon's BSA. *Id.* at p. 3. Likewise, as a condition to using the website to make a purchase, Amazon required Pickard to agree to its "Conditions of Use," wherein Amazon declares that the only warranty covering consumer purchases from a third-party seller come from that third-party seller. [Doc 59-10, pp. 4–5].

In addition to its use of Amazon's website and payment system to sell its products, Jisell also used Amazon's optional FBA storage and logistics services to fulfill Pickard's order. Amazon's FBA program allows third-party sellers to send inventory to Amazon's fulfillment centers for storage and subsequent delivery. [*Id.* at p. 6. Under the FBA program, when a consumer places an order for a third-party seller's product, Amazon simply retrieves the pre-packaged product from its warehouse, places the product in a shipping container or applies a shipping label to the product's box, and delivers or arranges delivery of the product to the buyer. *Id.* Thus, under the FBA program, a third-party seller merely provides a product, a product description, and a price to Amazon. Amazon then provides its website platform and marketing, physically stores the product in its warehouses, receives payment on behalf of the third-party, and ultimately delivers possession of the product to customers. In exchange for its services to the third-party seller, Amazon receives a service fee.[1]

Amazon organizes its inventory on its e-commerce site by Amazon Standard Identification Numbers ("ASINs"). The ASIN of the battery charger Pickard purchased is B079GTHXCT. Amazon maintains a Product Safety Team that it claims employs multiple tools, procedures, and processes to monitor for potential safety issues with listed ASINs. [Doc 69-15, p. 10]. At its discretion, the Product Safety

---

[1] Specifically, Amazon's fees in Pickard's transaction included a $3.28 "FBA Pick & Pack Fee," which was the fee Amazon charged for "pulling the product off the shelf, packing it, shipping and distributing it to Mr. Pickard," and Amazon's $2.25 "Referral Fee," which was the fee Amazon "charge[d] for sales in [its] stores for referring Amazon customers to a particular seller's offer." [Doc. 69-3, pp. 14–15]. Amazon withholds those fees when remitting the sale price to the seller after the transaction takes place. *Id.* at p. 5.

Team can "suppress" or remove listings that pose safety issues. At the time of Pickard's purchase, there were no safety-related reviews or reports for the ASIN for the four-slot battery charger. However, there were three negative consumer safety reviews on a similar six-slot battery charger, which bore a different ASIN, but was also sold by Jisell.[2]

Plaintiffs argue Amazon is liable for the allegedly defective four-slot battery charger under three separate theories: manufacturer products liability under the Louisiana Products Liability Act, non-manufacturer liability under the Louisiana Products Liability Act, and liability under the tort theory of negligent undertaking.

I. **Products Liability and Non-Manufacturer Seller Liability**

The Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. Ann. 9:2800.52. Claimants "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." *Id*. Under the LPLA, a manufacturer is defined as a person or entity who is in the business of manufacturing a product for placement into trade or commerce. La. R.S. Ann. 9:2800.53(1). Notably, the LPLA also provides for liability of a "seller-manufacturer" in cases where a seller is in the business of importing or distributing the products of an alien manufacturer and the seller is the alter ego of the alien manufacturer. La. R.S. Ann. 9:2800.53(1)(d).

---

[2] These reviews were published on October 11, 2019; October 13, 2019; and October 19, 2019. [Doc. 69-5, pp. 40–43].

Here, Plaintiffs allege that Amazon qualifies as a "manufacturer-seller." But in order for this classification to apply, Amazon must first be determined to be the "seller" of the battery charger. The LPLA defines "seller" as a "person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." La. R.S. Ann. 9:2800.53(2).

Alternatively, Plaintiffs argue that Amazon should be held liable as a non-manufacturing seller. In order to prevail under this theory, Plaintiffs must show that the product was defective, that the seller had actual or constructive knowledge that the product was defective, and that the seller failed to declare the defect. *Alexander v. Toyota Motor Sales, U.S.A.*, 13-0756 (La. 9/27/13), 123 So.3d 712, 714. *See also, Slaid v. Evergreen Indem., Ltd.*, 32,363 (La. App. 2 Cir. 10/27/99), 745 So.2d 793, 799. Notably, the LPLA's definition of "seller" also applies to claims against non-manufacturing sellers. *Skaggs v. Amazon.com, Inc.*, 2020-1089 (La. App. 1 Cir. 12/15/21), 334 So. 3d 780, 792, (nt. 2) writ denied, 2022-00068 (La. 3/15/22), 333 So. 3d 1243, citing *Slaid v. Evergreen Indem., Ltd.*, 745 So.2d 797, 799 (La. Ct. App. 1999). At bottom, then, in order for Plaintiffs to pursue claims under either LPLA-based theory of liability, Amazon must qualify as a "seller" of the battery charger under the LPLA.

Here, it is undisputed that Jisell retained ownership of the battery charger until it was transferred to Pickard. However, Jisell opted to use Amazon's FBA services, in which Amazon both stored Jisell's battery charger in its facility and shipped the product to Pickard. Thus, because a "seller" under the LPLA

encompasses both a person or entity that is in the business of conveying title <u>*or*</u> <u>*possession*</u> of a product to another person or entity, resolution of Amazon's potential liability under the LPLA hinges on the definition of "possession" under Louisiana law. La. R.S. Ann. 9:2800.53(2) (emphasis added). However, neither the LPLA nor related Louisiana jurisprudence provides a clear definition.

Amazon asserts that possession in the context of the LPLA inherently requires an intent to own – extracting the definition of possession from a provision in Book III of the Louisiana Civil Code pertaining to acquisitive prescription. That article provides that, "[t]o acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La. Civ. Code art. 3424. Additionally, Amazon argues that possession should be read in conjunction with the Civil Code's definition of sale, which requires the transfer of "ownership of a thing to another for a price in money." La. Civ. Code art. 2439.

In its briefing, Amazon cites works by Symeon Symeonides, A.N. Yiannopoulous, and Ronald Scalise Jr. for the proposition that La. Civ. Code art. 3421 should be read *in pari materia* with La. Civ. Code art. 3424 and stresses the distinction made historically in Louisiana law between possession and detention. With regard to the legislative history of the LPLA, Amazon avers that the Louisiana Legislature drafted the LPLA in response to and with the goal of scaling back the broad "liability without fault" standard threatened by *Halphen v. Johns-Mansville Sales Corp.*, 484 So.2d 110 (La. 1986) (holding that a manufacturer could be held strictly liable for injuries caused by an unreasonably dangerous per se product).

In their Opposition, Plaintiffs posit that well-established Louisiana rules for statutory construction and interpretation dictate that undefined words in a statute must be given their plain meaning. *See Oubre v. Louisiana Citizens Fair Plan*, 79 So. 3d 987, 997 (La. 2011); *see also* La. R.S. 1:3. Plaintiffs cite the definition of possession in Black's Law Dictionary, "[t]he fact of having or holding property in one's power; the exercise of dominion over property" as well as an alternate definition of possession contained in Civil Code article 3421, which provides, "Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name." Plaintiffs assert that the plain and general meaning of possession does not bear an "intent to own" requirement. Rather, possession merely requires having or holding physical custody of the thing. Relevant to this case, Plaintiffs urge that Amazon possessed the battery charger by maintaining custody of it in its fulfillment center and then shipping it to the customer, Pickard.

The facts of the case at hand pose an issue of first impression in Louisiana. In *Skaggs v. Amazon.com, Inc.*, the Louisiana First Circuit Court of Appeal determined Amazon was not a seller under the LPLA where a third-party seller's product caused harm to plaintiff.[3] Importantly, however, the third-party seller in *Skaggs* stored the relevant product and shipped it directly to the consumer. 334 So.3d at 787. The *Skaggs* Court considered the fact that Amazon did not ship the package and never held title to or possession of the product to reach its conclusion that Amazon was not

---

[3] 2020-1089 (La. App. 1 Cir. 12/15/21), 334 So. 3d 780, 786–87, writ denied, 2022-00068 (La. 3/15/22), 333 So. 3d 1243.

a seller under the LPLA. *Id.* at 789. Here, in contrast, Jisell used Amazon's FBA program, which means that Amazon not only provided its website platform, marketing, and payments system, but also physically stored Jisell's battery chargers and arranged to ship them directly to the consumers.[4]

Because no Louisiana Supreme Court decision answers this question, this Court is faced with either proffering an *Erie* guess as to how the Louisiana Supreme Court would rule or certifying the question to the Louisiana Supreme Court. *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 436 (5th Cir. 2008); La. Sup. Ct. R. 12. Given the importance of this issue in the modern marketplace and its likelihood of recurrence, the Court chooses to issue a certified question.[5]

## II. Negligent Undertaking

Amazon also argues in its Motion that Plaintiffs' negligent undertaking claims fail because they can prove neither: (i) an assumed duty by Amazon, (ii) that Amazon's behavior increased the risk to Pickard; nor (iii) that Pickard relied on any undertaking by Amazon. Negligent undertaking's roots lie in two separate but

---

[4] The four-slot battery charger was stored in an Amazon facility in San Marcos, Texas, before being shipped by Amazon Fulfillment Services via UPS to Pickard. [Doc. 59-10, p. 6].

[5] Two Justices of the Louisiana Supreme Court have recognized the need to address the potential liability of third-party marketplaces for injuries to Louisiana citizens. Dissenting in the Louisiana Supreme Court's denial of certiorari in *Skaggs*, Justice Crichton commented, "…this particular intersection of technology, online marketplace entities, and the law warrant [the Louisiana Supreme] Court's attention and thorough consideration." *Skaggs v. Amazon.com, Inc.*, 2022-00068 (La. 3/15/22), 333 So. 3d 1243, 1244. Likewise, Justice McCallum noted the necessity for "greater clarity" "in what can be a kaleidoscope of confusion regarding the liability of third-party marketplace." *Id.* "Ultimately, what is of concern in the modern business landscape is the current lack of well-developed legal principles as to the liability of mammoth online platforms to consumers." *Id.*

related provisions of the Restatement (Second) of Torts. Section 323 of the Restatement provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

Section 324A provides for liability to third persons, and states,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).[6]

Though courts have recognized this tort theory in Louisiana, negligent undertaking has assumed alternative monikers in state court jurisprudence,

---

[6] The rule stated in § 324A parallels § 323. Restatement (Second) of Torts § 324A (cmt. a) (1965).

including "voluntary assumption of duty doctrine," "assumption of duty doctrine," and the Common Law "Good Samaritan law/doctrine." *See, e.g., Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1128, adhered to on reh'g (Jan. 19, 2006); *see also Hebert v. Rapides Par. Police Jury*, 2006-2001 (La. 4/11/07), 974 So. 2d 635, 643, on reh'g (Jan. 16, 2008). Further, there is no Louisiana Supreme Court precedent applying this doctrine in the context of the potential liability of an online retailer for products sold on its website by a third-party.[7]

In their Complaint, Plaintiffs claim that Amazon undertook the duty to identify and remove unsafe products, monitor safety documentation for products sold on its website, directly notify customers if a safety issue arises with a product, and

---

[7] Despite varying terminology, the Louisiana Supreme Court has allowed liability to be imposed on those who fail to exercise reasonable care after undertaking to perform a duty. *See Bujol v. Entergy Servs., Inc.,* 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1129, *adhered to on reh'g* (Jan. 19, 2006) (negligent undertaking liability in the parent-subsidiary context in Louisiana law under Restatement (Second) of Torts § 324A); *Mundy v. Department of Health and Human Resources,* 620 So.2d 811 (La.1993); *Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364 (La.1984) (where a duty to protect others against criminal conduct has been assumed, liability may be created by negligent breach of that duty); *Hebert v. Rapides Par. Police Jury*, 2006-2001 (La. 4/11/07), 974 So. 2d 635, on reh'g (Jan. 16, 2008) (finding the parent-subsidiary relationship in *Bujol* applicable to the relationship between DOTD and the highway departments of political subdivisions of the State). *See also Dornak v. Lafayette Gen. Hosp.*, 399 So. 2d 168 (La. 1981) (where that court references Restatement (Second) of Torts § 323, finding an employer has a duty to disclose tubercular condition to prospective employee during pre-employment physical exam).

The *Skaggs* case, discussed above and decided by the Louisiana First Circuit Court of Appeals, presented similar facts. Although in determining Louisiana law, federal courts "should first look to final decisions of the Louisiana Supreme Court," federal courts may also look to the decisions of intermediate appellate state courts for guidance. *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000); *see Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir.1998). In *Skaggs*, the plaintiff argued that Amazon assumed numerous undertakings to keep its customers safe through its product safety actions. *Skaggs*, 334 So.3d at 789. However, the *Skaggs* court did not address whether Amazon had assumed a duty because the plaintiff did not adduce sufficient evidence to demonstrate that Amazon's actions increased plaintiff's risk of harm or that her reliance on the allegedly negligent undertaking caused her injury. *Id.* at 791-92.

vet new sellers. Essentially, Plaintiffs allege that Amazon assumed a duty to keep its customers safe from defective or dangerous products by implementing safety procedures and online tools in its system.

Plaintiffs further claim that Pickard relied on Amazon's undertaking and provide evidence they contend is sufficient to avoid summary judgment. First, to establish that a material fact exists as to public or third-party reliance under § 324A, Plaintiffs point to a deposition response by John Horn, Amazon's Manager of Safety Controls for Product Safety and Compliance, regarding general consumer reliance on Amazon. When asked if he "believe[d] that Amazon expects their customers [to] rely upon [the] representation that Amazon is going to use sophisticated tools to prevent noncompliant products from being listed on its website;" Horn answered, "It's my opinion that is correct." [Doc. 69-15, p. 37]. Plaintiffs also refer to one of Amazon's blogs posted in response to an article published in *The Wall Street Journal* regarding Amazon's product safety and compliance practices. All told, Plaintiffs broadly reference Amazon's consumer safety reputation and allege that Amazon specifically directed its product safety undertakings to its customers.

Secondly, in order to prove a fact issue exists as to Pickard individually and directly relying on Amazon's alleged undertakings under § 323, Plaintiffs present the affidavit of Angela Pickard, Pickard's daughter, in which she called her father a "conscientious shopper" and stated that he "made an effort to make purchases from sources he trusted, such as Amazon's website, rather than from stores or other websites because Amazon told its customers, like my dad, that the products sold on its website were safe and met safety standards." [Doc. 69-16, p. 2].

As above, because no Louisiana Supreme Court decision has addressed the applicability of the negligent undertaking tort theory in the context of the liability of an online marketplace selling potentially dangerous products of third-party merchants, this Court is faced with either proffering an *Erie* guess as to how the Louisiana Supreme Court would rule or certifying the question to the Louisiana Supreme Court. *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 436 (5th Cir. 2008); La. Sup. Ct. R. 12. Given the importance of this issue in the modern marketplace and its likelihood of recurrence, the Court chooses to issue a certified question.

## QUESTIONS CERTIFIED

This Court recognizes the importance and substantial implications these issues carry in light of the ever-increasing presence of e-commerce in the modern marketplace. Given the number of customers that shop on Amazon's marketplace and the number of products housed in Amazon fulfillment warehouses, Louisiana state and federal courts are certain to face these issues again. Further, in recent years courts across the nation have grappled with the issue of whether Amazon should be held liable for defective products sold by third-party sellers on its online platform.[8]

---

[8] Some courts have determined that Amazon should incur strict liability for defective products sold by third-party sellers on its website. *See e.g., New Jersey Manufacturers Insurance Group v. Amazon.com Inc.*, Prod. Liab. Rep. (CCH) P 21465, 2022 WL 2357430, *8 (D.N.J. 2022) (holding Amazon liable as a "seller" of the defective third-party hoverboard under New Jersey products liability law); *State Farm Fire and Casualty Company v. Amazon.com, Inc.*, 390 F. Supp. 3d 964, 974, Prod. Liab. Rep. (CCH) P 20676 (W.D. Wis. 2019) (holding Amazon was a seller under Wisconsin strict product liability law for products sold by third parties on its website). However, other courts have found the opposite. *See e.g., Erie Insurance Company v. Amazon.com, Inc.*, 925 F.3d 135, 144, Prod. Liab. Rep. (CCH) P 20628,

The Rules of the Louisiana Supreme Court state that it may answer questions of law certified to it by any district court of the United States if the questions are "determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state…" La. R. Sup. Ct. 12. Additionally, the United States Fifth Circuit Court of Appeals has set out a list of factors, known as the *Shevin* factors, to consider when deciding whether to certify a question to a state supreme court: (i) "the closeness of the question and the existence of sufficient sources of state law;" (ii) "the degree to which considerations of comity are relevant in light of the particular issue and case to be decided;" and (iii) "practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015), certified question answered, 194 So. 3d 847 (Miss. 2016), citing *Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 549 (5th Cir.1998) (quoting *Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir.1976)).

---

98 U.C.C. rep. Serv. 2d 1170 (4th Cir. 2019) (holding that Amazon.com was not a "seller [of the headlamp that caused a house fire] and therefore did not have liability under Maryland law for the allegedly defective product sold on Amazon's website by a [third-party]." 925 F.3d at 144; *Fox v. Amazon.com, Inc.*, 930 F.3d 415, Prod. Liab. Rep. (CCH) P 20654 (6th Cir. 2019) (holding Amazon "exercised [in]sufficient control over [the defective hoverboard that caused a house fire] to be deemed a 'seller' of the hoverboard under the [Tennessee Products Liability Act], but that Amazon's assumption of a duty to act raised factual issues for plaintiffs' negligence claims." *Id.* at 425–28. Notably, some courts, including the Fifth Circuit, have certified the question of whether strict products liability applied to Amazon as a "seller" of a third-party product. *See McMillan v. Amazon.com, Inc.*, 983 F.3d 194, Prod. Liab. Rep. (CCH) P 21030 (5th Cir. 2020), certified question accepted, (Jan. 8, 2021); *McMillan v. Amazon.com, Inc.*, 625 S.W.3d 101, Prod. Liab. Rep. (CCH) P 21179 (Tex. 2021) (5–2 decision) (the Texas Supreme Court found that Amazon was not a "seller" even though it handled the transaction and delivery process).

After due consideration of these factors, and for the reasons discussed herein, this Court certifies the following questions of Louisiana state law to the Supreme Court of Louisiana:

(1) Under Louisiana products-liability law, is the operator of an online marketplace a "seller" of third-party products sold in its marketplace when the operator did not hold title to the product but: (i) had physical custody of the product in its distribution warehouse; and (ii) controlled the process of the transaction and delivery through its product fulfillment program?

(2) Under what circumstances, if any, would the operator of an online marketplace who voluntarily adopts safety procedures for the products sold through its website by third-party sellers, be liable for injuries sustained by the purchaser of a defective product based on a theory of negligent undertaking?

The Court disclaims any intention or desire that the Louisiana Supreme Court confine its reply to the precise scope of the questions certified. Further, the Court will transfer to the Louisiana Supreme Court the record and briefs in this case upon request.

Accordingly, Amazon's Motion is DENIED at this time pending action by the Louisiana Supreme Court on this Court's certified questions. Amazon may re-urge its Motion within thirty (30) days of resolution or denial of the certified questions by the Louisiana Supreme Court.

THUS, DONE AND SIGNED in Chambers on this 27th day of November 2023.

						_____
						DAVID C. JOSEPH
						UNITED STATES DISTRICT JUDGE